## STATE EX REL. JOSEPH W. PETERSON v. ELLEN SANDERS.[1]

June 25, 1943.

No. 33,585.

*Dorival & Roerkohl,* for appellant.

*F. J. O'Brien,* for respondent.

THOMAS GALLAGHER, JUSTICE.

On August 25, 1942, respondent instituted *habeas corpus* proceedings in the district court of Houston county to obtain custody of his five-year-old daughter, Lucia Gail Peterson, detained by her grandmother, Ellen Sanders, appellant herein.

[1]Reported in 10 N. W. (2d) 387.

On September 18, 1942, the district court made findings and ordered that the child remain with appellant until further order of the court. On November 12 respondent filed a verified petition for modification of this order. On December 15 the court amended its prior order and granted custody to respondent. This appeal is from the amended order. By stipulation, the matter was submitted upon the record below without further testimony. It was heard *de novo* by this court upon such record.

Lucia Gail Peterson was born at Duluth on July 9, 1937. Her mother, wife of respondent and daughter of the appellant, died at her birth. There were no other children. At that time respondent was taking care of his crippled sister, and, being unable to care for his newly born child in addition, he accepted appellant's offer to take and care for her in appellant's home near Houston, Minnesota, where she has since lived.

Respondent has kept in close touch with his daughter and has visited her several times a year since that date. He has given appellant various sums of money for the child. Such sums were insufficient fully to provide for her, but his offers of additional help were refused by appellant. A friendly relationship existed between the parties until this dispute arose. Frequent letters passed between them, all friendly in their nature.

Respondent continued to live in Duluth, where he was engaged in the insurance business. At present he is also doing defense work in a local shipyard there. The record indicates that he is able to give the child a good home and amply provide for her. His sister no longer lives with him. About a year ago he remarried. His present wife, a woman of good character and education, is willing and anxious that her husband have his daughter in their home. She testified to that effect at the hearing and also stated that she and her husband, in anticipation of Lucia's coming to live with them, had prepared a room for her in their home in Duluth, with a child's bed and specially designed wallpaper, and that they had purchased a doll, toys, and other things in which she might find pleasure.

Respondent is a man of character, with many good qualities. He is on the board of trustees of his church, the Temple Baptist Church of Duluth, and has served in that capacity for many years. There is no indication that he would be unable to give his daughter the care and love she might normally expect from her father.

On the other hand, there is no question that the little girl has been given a good home and an abundance of love and attention by her grandmother. She has developed normally and is well trained and in good health. Every effort has been made to safeguard her and to give her the proper surroundings and guidance. There was testimony that if she remained in the custody of appellant she would be given a college education at the proper time.

The county welfare board of Houston county investigated the home of appellant. Its report indicated that she was a suitable person for the custody of the child and would furnish her with a proper home, care, attention, surroundings, and education. A similar investigation of respondent was made by the St. Louis county welfare board, which arrived at the same conclusion with respect to him.

The foregoing facts establish that Lucia will be well cared for regardless of which party is given her custody. The best interests of a minor child are of primary importance, but, other things being equal, the superior right of a parent to the custody of his child is recognized by law. In the instant case it is evident that the father can provide adequate care and attention for his daughter. The record is clear and convincing as to his financial ability and his character. His love for the child appears beyond question.

Appellant has given her granddaughter a fine home and is greatly attached to her. However, she is past 65 years of age and it must be recognized that her custody of the child would normally terminate within a few years in any event. Under such circumstances it seems best that such custody terminate now when the child's mind is not fixed in its ideas and when she may more readily adjust herself to new conditions and a new environment.

We adhere to the rule, supported by an overwhelming weight of

authority, that a parent should not be deprived of the custody of his child unless there are grave and weighty reasons therefor. None such appearing here, the rule must be followed. State ex rel. Vik v. Sivertson, 194 Minn. 380, 260 N. W. 522; State ex rel. Herniman v. Markson, 187 Minn. 176, 244 N. W. 687; State ex rel. Platzer v. Beardsley, 149 Minn. 435, 183 N. W. 956; State ex rel. Mattes v. Peterson, 156 Minn. 178, 194 N. W. 326; State ex rel. Fossen v. Hitman, 164 Minn. 373, 205 N. W. 267.

The language of Mr. Justice Dibell in the Herniman case, involving a small boy in similar circumstances, seems particularly appropriate here. It is as follows (187 Minn. 179, 244 N. W. 688):

"The grandparents must accept the inevitable. They will make their own sorrow and that of their grandson less if they accept the situation gracefully with a realization that they have done an appreciated good service for the boy just as have many good grandparents before them. The boy will soon accommodate himself to his changed surroundings. He can be in communication with his grandparents.

"All realize that the grandparents' custody must terminate before many years. It is best that the change come now."

Appellant may take solace and satisfaction in the thought that she has faithfully performed a service for her little granddaughter which will affect and influence her for good throughout her lifetime.

The order is affirmed and custody of the child is awarded to respondent. The case is remanded to the district court for supervision of the details of the transfer provided for in its order.

Affirmed.